UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SUSAN FOLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket No. 09-cv-239-P-S |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON MOTION TO TRANSFER VENUE**

En route from Florida to her home in Thomaston, Maine, Plaintiff Susan Foley passed through Reagan National airport in Arlington, Virginia. While there, she fell and sustained injuries that she claims were caused by the negligence of federal security personnel. To recover for these injuries, Ms. Foley filed suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. Before the Court is Defendant's Motion to Transfer Venue (Docket # 5), by which the United States seeks to transfer the action to the Eastern District of Virginia, where Reagan National is located. Ms. Foley opposes transfer. For the reasons that follow, the Court DENIES the motion to transfer.

**I.    BACKGROUND**

The Transportation Security Administration ("TSA") is an agency within the Department of Homeland Security responsible for protecting the transportation systems of the United States.[1] In this capacity, the TSA provides security officers at passenger screening checkpoints within Reagan National airport. Ms. Foley alleges that on March 8, 2007, as she entered one of these checkpoints, a precarious stack of trays or boxes toppled in her path, causing her to trip and fall.

---

[1] Ms. Foley originally named the United States Department of Homeland Security and the TSA as Defendants. She later consented to a motion by the Assistant United States Attorney to substitute the United States as the sole Defendant. The Court granted the motion.

She blames TSA security officers for her resulting injuries, which include a fractured right ankle and pain in her back and neck. Among other things, she claims the officers breached their duty of care by stacking the trays or boxes unreasonably high. Ms. Foley seeks compensatory damages for pain and suffering, loss of enjoyment of life, medical bills, lost income, and potential loss of earnings.

## II.   DISCUSSION

### A.   Legal Standard

The United States moves to transfer this action pursuant to 28 U.S.C. § 1404(a), which allows a district court to transfer an action to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." A court should also consider the availability of documents when deciding whether to transfer an action pursuant to § 1404(a). See Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000). Although there is a "strong presumption in favor of the plaintiff's choice of forum," id., relevant considerations may outweigh this presumption in particular cases. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) (instructing courts "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness'" (quoting Van Dusen v. Barrack, 376 U.S. 612, 622, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964))). It is the burden of the United States to convince the Court that the presumption is not determinative here. See Coady, 223 F.3d at 11.

### B.   The Positions of the Parties

The United States claims that convenience of witnesses and the location of documents weigh in favor of transfer. Citing convenience of witnesses as the most important factor, the United States argues that with the exception of Ms. Foley, all witnesses are located in the Eastern

District of Virginia, where her tort claim accrued. The United States contends that although some of these witnesses work for the TSA and are subject to its control, others are not. They are (1) a former TSA employee who saw Ms. Foley fall,[2] (2) a medic employed by the airport who provided emergency assistance to Ms. Foley and transported her to the hospital, and (3) a physician's assistant at the hospital who diagnosed Ms. Foley's fractured ankle and prescribed a splint and pain medication. None of these witnesses is employed by the TSA or resides within the geographic scope of the Court's subpoena power. The United States claims the convenience of these non-party witnesses, whom the Court cannot compel to testify at trial, deserves special consideration. The remaining witnesses, whose testimony the United States expects would be relevant to liability, are employed by the TSA. Finally, the United States points out that all relevant TSA documents are located at either the airport or TSA headquarters, which is nearby, and that because Ms. Foley was injured in Virginia, her tort claim is governed by Virginia law pursuant to the Federal Tort Claims Act.

     Ms. Foley argues that transfer would severely inconvenience her. She says she has limited resources to devote to the additional expenses associated with travel and representation that litigating her claim in Virginia would necessarily involve. In addition, pointing to her own witnesses, whose testimony she expects to be relevant to damages, she says that many of them reside in Maine. She includes in this group her medical providers, whom she imagines will be too busy to travel to Virginia, and her close friends, who share her financial constraints. As for the non-party witnesses on whom the United States focuses, Ms. Foley points out that in the event they refuse to attend trial, the proponent of their testimony could offer it by videotape or deposition transcript. With respect to the location of documents, Ms. Foley explains that much

---

[2] The former employee's description of the event is memorialized in a contemporaneous Airport Incident Report. (See Def.'s Mot. to Transfer Venue at Ex. 1 (Docket # 14).)

documentary evidence related to her damages is located here in Maine. Finally, Ms. Foley notes that because applicable Virginia law is virtually identical to Maine law, it would be as consistent with the interest of justice for this Court to adjudicate her claim as it would be for the transferee court in Virginia to do so.

### C.     Analysis

There is a specific venue provision permitting tort claims against the United States to be "prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b); see Carter v. United States, 333 F.3d 791, 793 (7th Cir. 2003). Thus, Ms. Foley's choice to file in her home state of Maine was both natural and permissible. At the same time, because she alleges that federal security personnel were negligent in the Eastern District of Virginia, she could have brought her suit there. Thus, the Eastern District of Virginia is the only venue to which the Court may transfer this case. See 28 U.S.C. § 1404(a) (permitting transfer of an action to "any other district . . . where it might have been brought"). As discussed below, however, the United States has not convinced the Court that transfer is appropriate.

### 1.     Convenience of Parties

It is undisputed that Maine, the district in which Ms. Foley resides, is the most convenient venue for her. The United States must therefore present evidence that "weigh[s] heavily in favor of transfer." Demont & Assocs. v. Berry, 77 F. Supp. 2d 171, 173 (D. Me. 1999). Although there is some authority for the proposition that an agency of the United States suffers inconvenience when forced to litigate in a district far from its headquarters, see In re Nat'l Presto Indus., Inc., 347 F.3d 662, 665 (7th Cir. 2003), the United States does not argue that this principle applies here. Given that Ms. Foley has filed suit in the district where she resides, and

considering the parties' relative abilities to absorb the costs of litigation, see Ashmore v. Ne. Petroleum Div. of Cargill, Inc., 925 F. Supp. 36, 39 (D. Me. 1996), the Court concludes that the convenience of the parties weighs in favor of denying transfer.

## 2.     Convenience of Witnesses

Ms. Foley's close friends and medical providers, whom she expects will testify as to damages, live in this district. Although she provides no details tending to show that she cannot present the substance of their testimony at trial by documents or deposition transcripts, she does say they would be inconvenienced by traveling to Virginia. That these witnesses reside in this district weighs in favor of denying transfer.

As explained above, the United States identifies three non-party witnesses who reside beyond the geographic scope of the Court's subpoena power and whose convenience it claims is paramount. Ms. Foley has specifically stated with respect to these witnesses that deposition by telephone and alternatives to live testimony at trial reduce the impact on the transfer analysis of their inconvenience and potential unavailability. (See Pl.'s Mem. in Opp'n to Def.'s Mot. to Transfer Venue (Docket # 10) at 5.) Provided Ms. Foley does not retreat from this position during discovery or at trial, the Court agrees.[3]

If the parties proceed to trial, the Court will try Ms. Foley's claim without a jury. See 28 U.S.C. § 2402. This mode of adjudication obviates whatever prejudice either party might have suffered had a non-party witness refused to testify in person, and the proponent were forced to counter live testimony with videotaped or deposition testimony in front of a jury. Although the lack of prejudice does nothing to make Maine a more convenient venue for the three non-party witnesses, it does tip the scales of in favor of leaving undisturbed Ms. Foley's chosen venue.

---

[3] The United States does not dispute that alternatives to live testimony are relevant to the transfer analysis, nor does it contend they would be inappropriate in this case. (See generally Def.'s Reply in Supp. of Mot. to Transfer Venue (Docket # 13).)

Given that the remaining witnesses the United States mentions are employees of the TSA, the United States has failed to demonstrate that the convenience of witnesses is sufficient, without more, to garner transfer to the Eastern District of Virginia. See Ashmore, 925 F. Supp. at 38 (noting that a court may deny a motion to transfer where "the witnesses are employees of the defendant and their presence can be obtained by the party").

### 3. Location of Documents

Ms. Foley says that much documentary evidence related to damages is located in Maine. The United States says that "all of TSA's relevant documents" are located in the Eastern District of Virginia. (Def.'s Mot. to Transfer Venue at 3.) The Court is not impressed that either of these asserted facts makes much difference. It appears that at least some of the documents to which the United States refers—specifically, the contemporaneous Airport Incident Report and emails to and from TSA employees about the incident—can now be found on the Court's electronic docket as attachments to the motion to transfer. (See Def.'s Mot. to Transfer Venue at Exs. 1-3 (Docket #s 14, 14-2, 14-3).) This illustrates that the location of documents is not static, and may not always be an important factor for a court considering whether to transfer an action—especially a relatively uncomplicated one—to another district. See Edens Techs., LLC v. Kile, Goekjian, Reed & McManus, PLLC, No. 09-188-P-H, 2009 U.S. Dist. LEXIS 85858, at *9 (D. Me. Sept. 18, 2009); compare Chretien v. Home Depot Int'l, Inc., 169 F. Supp. 2d 670, 675 (S.D. Tex. 2001) (noting that "[i]n a simple tort suit . . . it is especially unlikely that a multitude of documents will be necessary"), with Mobil Corp. v. S.E.C., 550 F. Supp. 67, 70-71 (S.D.N.Y. 1982) (transferring a reverse Freedom of Information Act action to the district where over seven thousand relevant documents were located). The Court concludes that the respective "locations" of the parties' relevant documents weigh, if at all, in favor of denying transfer.

### 4. Interest of Justice

In their abbreviated arguments on this factor, the parties focus on the applicability of Virginia law, as opposed to Maine law, and the likelihood of an expeditious resolution of their dispute. The Court is unconvinced that it makes any difference which state's substantive law applies in this apparently straight-forward tort action. Further, although the United States says that the proposed transferee court expeditiously resolves disputes, it concedes this Court does too. On balance, the United States has failed to convince the Court that transfer is in the interest of justice.[4]

## III. CONCLUSION

The Court is satisfied that the convenience of the parties and witnesses and the interest of justice, in the aggregate, do not weigh heavily in favor of transfer to the Eastern District of Virginia. For this reason and in light of Ms. Foley's express willingness to depose non-party witnesses by telephone and present their testimony at trial by videotape or deposition, the Court DENIES Defendant's Motion to Transfer Venue (Docket # 5).

SO ORDERED.

                                                    /s/ George Z. Singal
                                                    United States District Judge

Dated this 19th day of October, 2009.

---

[4] In its reply memorandum, the United States asks the Court to consider the strength of the transferee court's interest in the safety of travelers passing through airports located in its district. Because this qualifies as new matter that Ms. Foley did not raise in her opposition, the United States has run afoul of Local Rule 7(c). See D. Me. Loc. R. 7(c). Notwithstanding this violation, the Court is unmoved by the argument.